# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Lannon Lavar Burdunice,

      Petitioner,

v.

State of Minnesota,

      Respondent.

Case No. 20-cv-2215 (MJD/TNL)

**REPORT AND RECOMMENDATION**

---

Lannon Lavar Burdunice, OID #234804, MCF-Stillwater, 970 Picket Street North, Bayport, MN 55003 (pro se Petitioner); and

Jonathan P. Schmidt, Assistant County Attorney, Hennepin County Attorney's Office, 300 South Sixth Street, Suite C-2000, Minneapolis, MN 55487 (for Respondent).

---

This matter is before the Court, U.S. Magistrate Judge Tony N. Leung, on an Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Am. Pet., ECF No. 7. This action has been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Michael J. Davis, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that the Amended Petition be denied and dismissed with prejudice.

# I. PROCEDURAL AND FACTUAL BACKGROUND

## A. State Trial Court Proceedings

In 2016, Petitioner shot and killed J.H. during a drug deal. *State v. Burdunice*, No. A18-1269, 2019 WL 3000714, at *1 (Minn. Ct. App. July 8, 2019).[1]  Petitioner was charged with first-degree intentional murder during an attempted aggravated robbery (felony murder) and unlawful possession of a firearm. *Id*. Petitioner asserted self-defense. *Id*. Following his first trial, the jury found Petitioner guilty of unlawful possession of a firearm but was unable to reach a verdict on the murder charge. *Id*. The trial court "accepted the guilty verdict, discharged the jury, and scheduled another trial on the felony-murder charge." *Id.*

At his second jury trial, Petitioner again claimed self-defense. *Id*. The jury found Petitioner guilty of the lesser-included offense of second-degree intentional murder. *Id*. The trial court convicted Petitioner of unlawful firearm possession and second-degree intentional murder and sentenced him to 480 months' imprisonment. *Id*.

## B. Petitioner's Direct Appeal

Petitioner, through counsel, appealed to the Minnesota Court of Appeals. *Id*. He argued that the state trial court erred by rejecting his challenge to the State's peremptory strike of a black prospective juror; abused its discretion by excluding evidence of the victim's prior violent acts; abused its discretion by admitting evidence of Petitioner's prior convictions for impeachment purposes; and erred by convicting him of unlawful firearm

---

[1] A copy of this decision can be found at Respondent's Appendix pages 47-62.  The Court cites to the Bates-stamped pages of Respondent's Appendix throughout this Report and Recommendation, which are consecutively paginated.

possession without asking the jury to confirm the guilty verdict. *Id.* at *1-5. Petitioner also filed a pro se supplemental brief in which he argued that (1) the State's circumstantial intent evidence was not legally sufficient to uphold a conviction for second-degree murder; (2) the jury's verdict went against the weight of the evidence; (3) judicial errors and cumulative misconduct denied him of his right to a fair trial; and (4) cumulative prosecutorial misconduct deprived him of his right to a fair trial. Resp't's App. at 92-93. The Minnesota Court of Appeals affirmed Petitioner's convictions.

Petitioner then filed a petition for review with the Minnesota Supreme Court. *Id*. at 32-46. He sought review on five issues: (1) whether he was entitled to a new trial "because the prosecutor's purported reason for removing a black juror was an obvious pretext for racial discrimination"; (2) whether the trial court violated his "constitutional right to present a complete defense by excluding evidence showing [the victim's] violent and aggressive character and past pattern of aggressive and threatening behavior"; (3) whether the trial court committed reversible error "by allowing the state to specify the nature of [his] prior convictions for violation of an order for protection and threats of violence when impeaching his credibility"; (4) whether his "conviction for ineligible possession of a firearm [must] be vacated, and his case remanded for resentencing on the murder count, where the trial court discharged the jury without completing the guilty verdict and without providing the defense a reasonable opportunity to individually poll the jurors"; and (5) whether his pro se claims of insufficient evidence, judicial bias, and prosecutorial misconduct "raise meritorious federal constitutional issues." *Id*. at 33-34. The Minnesota Supreme Court denied review on September 17, 2019. *Id*. at 30.

Petitioner then filed a petition for a writ of certiorari with the United States Supreme Court on December 19, 2019. *Id*. at 2-27. The Supreme Court denied the petition for a writ of certiorari on March 9, 2020. *Id*. at 1.

### C. Petitioner's Postconviction Petitions

Since the filing of his Amended Petition, Petitioner has filed three petitions for postconviction relief in state district court.[2] The Court's review of these petitions shows no overlap between the issues raised in those petitions and the habeas petition currently before this Court.

### D. Federal Habeas Petition

Petitioner seeks habeas relief on eight grounds. *See generally* Am. Pet. First, he argues that the circumstantial evidence of intent to kill was insufficient as a matter of law to sustain a second-degree murder conviction. Second, he argues that the weight of the evidence does not support the second-degree intentional murder conviction. Third, he argues that the trial court denied him the right to present a complete defense by excluding evidence of the victim's past behavior. Fourth, he argues that the prosecutor committed a violation pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). Fifth, he argues that the trial court committed reversible error by allowing him to be improperly impeached through the use of his prior convictions. Sixth, he argues his conviction for ineligible possession of a firearm must be vacated because the trial court discharged the jury without completing the

---

[2] Petitioner filed a letter with the Court, indicating he intended to file petitions for postconviction relief in state court. *See* ECF No. 17. Accordingly, the Court reviewed the various filings in Petitioner's state court case file. *See Minnesota Court Records Online ("MCRO")*, https://publicaccess.courts.state mn.us/CaseSearch (enter case number 27-CR-16-19342) (last visited June 28, 2022). The state trial court denied each of Petitioner's petitions for postconviction relief.

verdict and without providing the defense a reasonable opportunity to poll the jurors individually. Seventh, he argues cumulative prosecutorial misconduct violated his rights to due process and a fair trial. Finally, he argues the trial court's cumulative errors, misconduct, and bias violated his right to due process, double jeopardy, equal protection, and right to a fair trial.

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 is used by state prisoners alleging they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant habeas corpus relief to a state prisoner on any issue decided on the merits by a state court unless the proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quotation and citation omitted). Absent a claim that falls within the parameters of 28 U.S.C. § 2254(d), a habeas corpus petition will not prevail. *Id.*

A state court decision is contrary to clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's]

cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "An 'unreasonable application' of Supreme Court precedent occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." *Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016) (citing *Williams*, 529 U.S. at 407). "In other words, it is not enough . . . to conclude that, in [the court's] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

A state prisoner "must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). "To be fairly presented 'a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999)).

"Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Id*. Additionally, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32.

### A. Procedurally Defaulted Claims: Grounds Two and Five

For the reasons set forth below, the Court finds that Petitioner did not fairly present his weight-of-the-evidence (Ground Two) or impeachment through prior convictions (Ground Five) claims to the state courts and that they are procedurally barred. Therefore, the Court recommends these claims be dismissed with prejudice.

In Ground Two of his habeas petition, Petitioner argues that the jury's guilty verdict on the second-degree murder count goes against the weight of the evidence. Am. Pet. at 7. Specifically, Petitioner contends that the prosecution's murder case "was contextualized in its theory of aggravated robbery." *Id*. According to Petitioner, the prosecution presented evidence, and the prosecution's sole eyewitness testified, that J.H. was shot and killed during an attempted robbery. *Id*. Petitioner argues that because the jury "rejected" the prosecution's "aggravated robbery/murder theory" and acquitted him of the charges involving attempted aggravated robbery, the guilty verdict on the murder count goes against the weight of the evidence. The Court interprets this argument as a claim that the

guilty verdict on the second-degree intentional murder charge is inconsistent with the not guilty verdicts on the aggravated robbery-related charges.[3]

Petitioner did not fairly present his weight-of-the-evidence claim to the state courts because he did not "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" in his petition for review. *Cox*, 398 F.3d at 1031. Petitioner only cited *People v. Bailey*, 94 A.D.3d 904, 905 (2d Dept. 2012), a New York state appellate decision where the court found that "the verdict of guilty on the [murder count] was against the weight of the evidence since the evidence, properly weighed, does not prove beyond a reasonable doubt that the defendant [had an] intention to kill the complainant." The *Bailey* case, however, does not "rais[e] a pertinent federal constitutional issue." *See Cox*, 398 F.3d at 1031. Instead, *Bailey* applied a New York state law that requires the appellate division to review the evidence and determine whether the jury was justified in finding the defendant guilty. *See Bailey*, 94 A.D.3d at 905. The *Bailey* case does not refer to any constitutional provision or federal law. *See generally id*. Further, nothing in Petitioner's submissions suggest that any federal constitutional principles might be implicated by his claim. *See Cox*, 398 F.3d 1025. Thus, his weight-of-the-evidence claim is unexhausted.

In Ground Five of his habeas petition, Petitioner argues the trial court committed reversible error by allowing him to be impeached improperly through the use of his prior convictions. Am. Pet. at 12. Specifically, Petitioner contends that the prosecutor specified

---

[3] To the extent that Petitioner's argument could be construed as an insufficiency-of-the-evidence claim, this will be addressed in Section II.A *infra*. As discussed below, Petitioner did not demonstrate that he is entitled to habeas relief based on the sufficiency of the evidence of his murder conviction.

improperly the nature of his prior convictions for violation of a no-contact order and terroristic threats, and that his convictions should have instead been sanitized. *Id*.

A similar argument was raised in Petitioner's counseled brief to the Minnesota Court of Appeals. *See* Resp't's App. at 142. However, Petitioner did not present the argument as a federal constitutional issue or present any federal basis for review. Instead, he characterized it as an abuse of discretion by the trial court and relied on Minnesota evidentiary rules and state court cases interpreting those rules. *See id*. at 173-77. The Minnesota courts were therefore not alerted to any federal component of Petitioner's impeachment claim and Petitioner's impeachment claim is unexhausted. *See O'Sullivan*, 526 U.S. at 842 ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

When a habeas petition contains claims that have not been exhausted in the state courts, the reviewing court "must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, i.e., whether a state court would accord the petitioner a hearing on the merits." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citing *Harris v. Reed*, 489 U.S. 255, 268-70 (1989) (O'Connor, J., concurring)). "A state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Thus, "a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim

through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Id*. (citing *Murray v. Carrier*, 477 U.S. 478, 493-96 (1986)).

For the federal court to enforce a state procedural bar, it must be clear that the state court would hold the claim procedurally barred. *Id*. The relevant question then becomes "whether there is, under the law of [Minnesota], any presently available state procedure for the determination of the merit of th[ese] claim[s]." *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980). In this case, Minnesota law provides that once the petitioner has directly appealed his sentence "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976); *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). "Claims are considered 'known' [under the *Knaffla* rule] if they were available after trial and could have been raised on direct appeal." *Vann v. Smith*, No. 13-cv-893, 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015) (citing *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006)).

Both of Petitioner's unexhausted claims are procedurally barred. They were known to him following trial, and Petitioner thus cannot bring them in a subsequent postconviction petition. *See Knaffla*, 243 N.W.2d at 741; *Schleicher*, 718 N.W.2d at 449. They are therefore procedurally defaulted.

"Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). "The cause and prejudice requirement shows due

regard for States' finality and comity interests while ensuring that 'fundamental fairness remains the central concern of the writ of habeas corpus.'" *Id.* at 393 (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)). "This rule is nearly absolute, barring procedurally-defaulted petitions unless a habeas petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show actual innocence." *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002) (internal citations and quotation omitted); *Martinez v. Ryan*, 566 U.S. 1, 9-10 (2012); *Coleman*, 501 U.S. at 750-51. If a prisoner fails to demonstrate cause, the court need not address prejudice. *Mathenia v. Delo*, 99 F.3d 1476, 1481 (8th Cir. 1996).

To obtain review of a defaulted constitutional claim, "the existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Some examples of factors external to the defense which prevent a petitioner from developing the factual or legal basis of a claim are interference by the state, ineffective assistance of counsel, conflicts of interest, and legal novelty." *Mathenia*, 99 F.3d at 1480-81. Ineffective assistance of counsel claims generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 488-89.

Petitioner does not claim cause or prejudice. Nor does he allege actual innocence. Accordingly, the Court concludes that Grounds Two and Five of Petitioner's Amended

Petition are procedurally barred.  The Court recommends these claims be dismissed with prejudice.

### B. Remaining Claims

#### 1. Ground One: Sufficiency of the Intent Evidence

In Ground One, Petitioner claims that the prosecution's circumstantial "intent-to-kill" evidence was insufficient to sustain his second-degree intentional murder conviction. Am. Pet. at 5.  He argues that the first jury was deadlocked on the first-degree and second-degree felony-murder charges, and the second jury acquitted him of those charges. *Id.*; *see also Burdunice*, 2019 WL 3000714, at *1.  Petitioner contends that because the jury acquitted him of the charges involving attempted aggravated robbery (the felony-murder charges) and thus "rejected" the State's "aggravated robbery/murder theory," the State's evidence was not sufficient to sustain his conviction for second-degree intentional murder.[4] Am. Pet. at 7.  Petitioner relies on the Fourteenth Amendment in support of his insufficiency-of-the-evidence claim.  *See* Resp't's App. at 92.

A state prisoner who alleges that his conviction must be set aside because there was insufficient evidence to support the conviction raises a federal due process challenge for habeas review.  *See Jackson v. Virginia*, 443 U.S. 307, 320-21 (1979).  However, "this inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt," but rather, whether "after viewing the

---

[4] Petitioner raises the argument that the jury "rejected" the State's "aggravated robbery/murder theory" in connection with his weight-of-the-evidence claim in Ground Two of his habeas petition.  However, as best this Court can tell, this argument appears to also relate to his insufficiency-of-the-evidence claim in Ground One of his habeas petition.  Accordingly, this Court will consider that argument in Ground One as well.

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 318-19 (internal citations omitted). In other words, to obtain habeas relief on a sufficiency-of-the-evidence claim, it must be the case that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324 (Stevens, J., concurring). "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (citation and quotation omitted). This standard is heavily deferential to the state court's ruling and a habeas court must therefore defer to the state court's resolution of a sufficiency challenge in a proceeding under § 2254. *Id*.

In rejecting Petitioner's sufficiency-of-the-evidence claim on direct appeal, the Minnesota Court of Appeals concluded that "sufficient evidence supports [Petitioner's] murder conviction." *Burdunice*, 2019 WL 3000714, at *6. The Minnesota Court of Appeals found the State proved the following circumstances relevant to Petitioner's intent to kill the victim, J.H.:

> J.H. antagonized and insulted [Petitioner] during their text-message negotiations regarding quantity and price [of the drugs]. [Petitioner] brought his loaded gun to meet with J.H. and 'looked angry' when J.H. arrived. He stood outside J.H.'s open window, pointed the gun at J.H., and demanded 'the motherf--king money.' Within moments, [Petitioner] shot J.H. twice. While the shots were aimed toward J.H.'s left shoulder, at least one was fired from a range of one-half inch to two feet away from J.H. [Petitioner] then fled, leaving J.H. obviously gravely injured.

*Id.* Considering these circumstances, the Minnesota Court of Appeals concluded that "only one hypothesis is reasonable—that [Petitioner] shot J.H. not in self-defense but in anger, intending to kill him." *Id.*

When conducting habeas review, the key question is whether, after viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis added); *see also Hill v. Norris*, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting *Ward v. Lockhart*, 841 F.2d 844, 846 (8th Cir. 1988)) (explaining that in a § 2254 proceeding, a federal court "must accord 'great deference' where the state appellate court has found the evidence supporting the conviction constitutionally sufficient"). Applying these principles, this Court concludes that the Minnesota Court of Appeals found correctly that "sufficient evidence supports [Petitioner's] murder conviction." *See Burdunice*, 2019 WL 3000714, at *6. When viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to allow a reasonable juror to find beyond a reasonable doubt that Petitioner acted with intent to kill. As the Minnesota Court of Appeals noted, a finding of intent was supported "particularly [by] the multiple shots from relatively close range" and the fact that Petitioner "then fled, leaving J.H. obviously gravely injured." *See id.* The Minnesota Court of Appeals conducted a well-reasoned analysis that shows a reasonable trier of fact could find that Petitioner intended to kill J.H. beyond a reasonable doubt based on the evidence in the record. Thus, it was not objectively unreasonable for the Minnesota Court of Appeals to conclude that the evidence supported Petitioner's murder conviction.

Further, in evaluating Petitioner's sufficiency-of-the-evidence claim, the Minnesota Court of Appeals analyzed whether the evidence, "resolving all questions of fact in favor of the jury's verdict," was "consistent with a reasonable inference that the accused is guilty." *See Burdunice*, 2019 WL 3000714, at *5. In other words, the Minnesota Court of Appeals viewed the evidence in the light most favorable to the conviction and determined that the evidence was sufficient to allow the jurors to reach their verdict. This standard is functionally equivalent to the sufficiency-of-the-evidence standard laid out in *Jackson v. Virginia*. *See* 443 U.S. at 324 (holding that the petitioner was not entitled to habeas relief on a sufficiency-of-the-evidence claim because "[a] review of the record in the light most favorable to the prosecution convinces [the Court] that a rational factfinder could readily have found the petitioner guilty beyond a reasonable doubt"). Thus, Petitioner did not and cannot show that the Minnesota Court of Appeals' decision was contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1). *See, e.g., Barnes v. Hammer*, No. 12-cv-2745 (PAM/SER), 2013 WL 5488531, at *16 (D. Minn. Oct. 1, 2013) (explaining that the petitioner cannot show that the state court's decision was "contrary to" the Supreme Court's "clearly established law" where the state court correctly identified the relevant governing principles).

Similarly, Petitioner did not establish that the state court's resolution of his sufficiency-of-the-evidence claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2). A state court's resolution of a factual issue will be presumed to be correct unless the petitioner shows otherwise by clear and convincing evidence. 28 U.S.C. §

2254(e); *see also White v. Dingle*, 757 F.3d 750, 755-56 (8th Cir. 2014) ("An unreasonable determination of the facts in light of the evidence presented in state court proceedings occurs only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.") (quotations omitted). Here, Petitioner has not shown by clear and convincing evidence that the Minnesota Court of Appeals' finding that the evidence was sufficient to support his murder conviction was unreasonable. Instead, Petitioner's argument about the sufficiency-of-the-evidence is best categorized as "reargue[ment of] the evidence in the record seeking the opposite outcome," rather than a direct attack on the Minnesota Court of Appeals' factual determinations. *See Fredrickson v. Minnesota*, No. 16-cv-2829 (PJS/TNL), 2017 WL 9672389, at *6 (D. Minn. Dec. 29, 2017), *report and recommendation adopted*, 2018 WL 1705264 (D. Minn. Apr. 9, 2018). Thus, Petitioner "has not shown by clear and convincing evidence that [the] factual determination by the Minnesota state courts was incorrect," and his sufficiency-of-the-evidence claim should be denied. *See id*.

In sum, Petitioner has not demonstrated that the state court's decision was contrary to, or involved an objectively unreasonable application of, clearly established federal law. Accordingly, this Court recommends that the sufficiency-of-the-evidence claim raised in Ground One be denied.

### 2. Ground Three: Exclusion of Evidence

Petitioner next claims that the trial court denied him the constitutional right to present a complete defense by excluding evidence of the victim's past behavior. Am. Pet. at 8. Petitioner claims that during pretrial motions in limine, he sought to introduce

evidence of J.H.'s "prior similar acts of violence and pattern of aggressive/threatening behavior involving other marijuana deals." *Id*. Specifically, Petitioner sought to cross-examine J.H.'s girlfriend, K.S., about several incidents she reported in an affidavit in support of her petition for an order for protection against J.H. Resp't's App. at 162. The affidavit detailed several incidents where J.H. was allegedly threatening and abusive. *Id*. In one incident, K.S. reported that J.H. raced out of a parking lot where they were waiting to buy drugs, yelled at her, drove erratically weaving in and out of traffic and speeding, and threatened her harm. *Id*. at 162-63. Petitioner contends that this behavior is "markedly similar to how Petitioner described [J.H.] acted" at his trial and was critical to his self-defense case. Am. Pet. at 8. Relying on Supreme Court cases *Holmes v. South Carolina*, 547 U.S. 319 (2006), and *Chambers v. Mississippi*, 410 U.S. 284 (1973), Petitioner argues that the exclusion of this evidence violated his constitutional right to present a complete defense. Am. Pet. at 8; Resp't's App. at 141.

"It is well established that the Fourteenth Amendment, along with the Sixth Amendment, guarantee criminal defendants the opportunity to present a complete defense, including the right to present relevant testimony." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999); *see also Holmes*, 547 U.S. at 319 ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (citation and internal quotation marks omitted). A criminal defendant, however, "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under

17

standard rules of evidence." *Khaalid v. Bowersox*, 259 F.3d 975, 978 (8th Cir. 2001) (citing *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). Instead, the defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302.

"[S]tate court rulings on evidentiary issues normally are not reviewable in federal habeas corpus proceedings." *Jones v. Fabian*, No. 09-cv-2781 (JNE/FLN), 2010 WL 2734299, at *20 (D. Minn. June 9, 2010). A habeas court may examine the trial court's evidentiary ruling "only to determine whether the asserted error denied due process." *Bailey v. Lockhart*, 46 F.3d 49, 50 (8th Cir. 1995). A petitioner who claims that a state court evidentiary ruling violated his due process rights "faces a heavy burden of persuasion." *Jones*, 2010 WL 2734299, at *18. "'To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict *probably* would have been different.'" *Id.* (quoting *Gee v. Groose*, 110 F.3d 1346, 1350 (8th Cir. 1997)). The Eighth Circuit Court of Appeals has observed that "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation," and "[o]nly the exclusion of critical, *reliable* and highly probative evidence will violate due process." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000) (quoting *Sweet v. Delo*, 125 F.3d 1144, 1158 (8th Cir. 1997)); *see also Henderson v. Minnesota*, No. 03-cv-6507 (JRT/FLN), 2005 WL 5168551, at *13 (D. Minn. July 25, 2005) ("Needless to say, it is not easy for a habeas petitioner to affirmatively demonstrate that some particular

evidentiary ruling, by itself, *probably* made the difference between conviction and acquittal.")

Here, the Minnesota Court of Appeals correctly identified the applicable legal rules related to Petitioner's constitutional right to present a complete defense. Specifically, the Minnesota Court of Appeals explained that: "A criminal defendant has a constitutional right to a meaningful opportunity to present a complete defense. But this right does not exempt criminal defendants from the rules of evidence, which are designed to assure fairness and reliability in ascertaining guilt or innocence." *Burdunice*, 2019 WL 3000714, at *3 (citations and internal quotation marks omitted). "This recitation of the applicable legal principles is consistent with, not contrary to, the apposite federal law discussed above." *See Jones*, 2010 WL 2734299, at *21. Thus, "[b]ecause the state courts correctly identified the governing legal rules . . . only the 'unreasonable application' clause . . . concerns us here." *Id.* (quoting *Marcrum v. Luebbers*, 509 F.3d 489, 504 (8th Cir. 2007)). To establish that he is entitled to habeas relief because the state courts' application of the law was "objectively unreasonable," Petitioner must demonstrate "that the [evidentiary] error was 'so gross' . . . 'conspicuously prejudicial' . . . or otherwise of such magnitude that it fatally infected the trial and failed to afford [Petitioner] the fundamental fairness which is the essence of due process." *See Kerr v. Caspari*, 956 F.2d 788, 789 (8th Cir. 1992). In other words, Petitioner must show that "absent the alleged impropriety the verdict *probably* would have been different." *See Gee*, 110 F.3d at 1350 (emphasis added). In making this determination, this Court reviews "the totality of the facts in the case

pending before [it] and analyze[s] the fairness of the particular trial under consideration."
*See Ellis v. Black*, 732 F.2d 650, 658 (8th Cir. 1984).

The Minnesota Court of Appeals carefully considered the proffered testimony at issue and determined that the evidence was properly excludable under Minnesota law. Specifically, the Minnesota Court of Appeals concluded that the testimony was not admissible under Minn. R. Evid. 405 because Petitioner was not aware of the specific prior violent acts he intended to introduce at the time of the offense. *Burdunice*, 2019 WL 3000714, at *3 (citing *State v. Zumberge*, 888 N.W.2d 688, 694 (Minn. 2017) (explaining that prior-acts evidence is admissible as substantive evidence only if the defendant was aware of the victim's prior acts at the time of the alleged offense). The Minnesota Court of Appeals noted that:

> [Petitioner] does not dispute that he was unaware of [J.H.'s violent conduct toward K.S.] at the time of the offense, contending only that it is the most 'convincing' evidence supporting his self-defense claim. But 'convincing' is not the standard for admissibility, and evidence that has 'probative force' is routinely excluded based on other considerations, such as its potential for unfair prejudice. * * * [Petitioner] does not articulate any basis for disregarding the plain language of rule 405(a) and binding supreme court caselaw.

*Id*. Further, the Minnesota Court of Appeals was "not persuaded" by Petitioner's argument that the proffered testimony was admissible under Minn. R. Evid. 404(b) for the purpose of showing J.H.'s "pattern of operation." *Id*. The Minnesota Court of Appeals found that Petitioner's "argument demonstrates he sought to offer evidence of J.H.'s specific prior conduct to show that he acted in conformity with his violent character, which is precisely what rules 404(a)(2) and 405(a) prohibit." *Id*.

This Court finds that the Minnesota Court of Appeals evaluated properly the proffered testimony, namely, that it was not admissible under either Minn. R. Evid. 405 or 404(b).  First, the proffered testimony about J.H.'s "prior similar acts of violence and pattern of aggressive/threatening behavior involving other marijuana deals," Am. Pet. at 8, was not admissible under Rule 405 because Petitioner was not aware of those facts at the time of the offense.  *See State v. Penkaty*, 708 N.W.2d 185, 202 (Minn. 2006) (holding that evidence of prior acts of violence by the victim is admissible to show that the defendant was reasonably put in apprehension of serious bodily harm "*provided that the defendant knew of the prior acts*") (emphasis added); *State v. Bland*, 337 N.W.2d 378, 382 (Minn. 1983) (same).  Similarly, it was not objectively unreasonable for the Minnesota Court of Appeals to find that the proffered testimony was not admissible under Rule 404(b).  Under Rule 404(b), "if [a] defendant offers the evidence not to show that the victim acted in conformity with his bad character but to show his intent, knowledge, plan, and so forth, the evidence is admissible."  *Bland*, 337 N.W.2d at 383.  Here, however, rather than offering the evidence to show J.H.'s intent, knowledge, plan, or so forth, Petitioner wanted to offer evidence that J.H. acted in conformity with the past specific instances described by K.S.  Thus, it was not unreasonable to exclude the evidence.

Moreover, upon examination of the record, this Court cannot conclude that Petitioner's trial probably would have had a different outcome if the evidence he sought to present to the jury had been presented.  Petitioner did not meet his "heavy burden of persuasion" to affirmatively demonstrate that the exclusion of the proffered testimony "was 'so gross' . . . 'conspicuously prejudicial' . . . or otherwise of such magnitude that it fatally

infected the trial" and violated his due process rights. *See Kerr*, 956 F.2d at 789; *Jones*, 2010 WL 2734299, at *18. Therefore, this Court recommends that the claim raised in Ground Three of his habeas petition be denied.

### 3. Ground Four: *Batson* Violation

Petitioner also argues that the prosecutor committed a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), during his second trial when the prosecutor used a peremptory strike to remove a black juror. Am. Pet. at 10. After Petitioner raised a *Batson* challenge, the prosecutor claimed that he struck the juror because she lied when she testified that she was unaware that the father of her child had a criminal record. *Id*. The trial court allowed the strike. *Id*. Petitioner claims that he "is entitled to a new trial because the prosecutor's purported reason for removing [the] black juror was an obvious pretext for racial discrimination." *Id*.

The use of peremptory challenges to exclude persons from a jury based solely on race is prohibited by the Equal Protection Clause of the Fourteenth Amendment. *Batson*, 476 U.S. at 89. While a defendant has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria," they have "no right to a petit jury comprised in whole or in part of persons of his own race." *Id*. at 85-86 (citations and internal quotation marks omitted). Rather, "[t]he Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race." *Id*. at 86.

The Supreme Court has adopted a three-part test to determine whether a peremptory strike violates *Batson* and the Equal Protection Clause. *U.S. Xpress Enter., Inc. v. J.B.*

*Hunt Transp., Inc.*, 320 F.3d 809, 812 (8th Cir. 2003). First, the defendant must make a prima facie showing of racial discrimination, namely, that the prospective juror is a member of an identifiable racial minority and that the individual was stricken because of his or her race. *Batson*, 476 U.S. at 96. Second, assuming this showing is made, the burden shifts to the prosecutor to show that a racially neutral reason exists for striking the potential juror. *Id*. at 97. Third, the court must determine whether the prosecutor proffered a race neutral explanation or whether the reason given was pretextual. *Id*. at 98.

Petitioner initially raised his *Batson* challenge during jury selection at his second trial. *Burdunice*, 2019 WL 3000714, at *2. During jury selection, the prosecutor exercised a peremptory strike of juror 22, a black woman. *Id*. Petitioner argued that the strike was motivated by racial discrimination because juror 22 is black, while "[t]he jury pool has been predominantly white," and juror 22 was subjected to a greater "level of scrutiny" than other jurors. *Id*. The prosecutor argued that Petitioner did not meet his prima facie burden and explained a race-neutral reason for the strike—the criminal history of juror 22's boyfriend. *Id*. The trial court denied Petitioner's *Batson* challenge, finding that Petitioner failed to make a prima facie case of racial discrimination and that the prosecutor offered a race-neutral explanation for the strike. *Id*.

The Minnesota Court of Appeals held that the trial court did not err in rejecting Petitioner's *Batson* challenge and finding that Petitioner "failed to make a prima facie showing that the state exercised its peremptory challenge based on race." *Id*. at *2-3. The Minnesota Court of Appeals concluded that "there is no indication that the state's removal of juror 22 was part of a discriminatory pattern in jury selection." *Id*. at *2. Further, the

Minnesota Court of Appeals found that the record did not suggest that the prosecutor singled out juror 22 in considering the criminal history of someone intimately connected to a prospective juror or the prospective juror's honesty about that history. *Id*. Moreover, the Minnesota Court of Appeals held that the trial court did not err in finding that the prosecutor satisfactorily explained the strike with a race-neutral reason. *Id*. at *3. It noted that juror 22's statements during jury selection raised "legitimate doubts either way that she could be an attentive and impartial juror in this case," and that Petitioner "did not identify any pretext but merely reiterated his prima facie arguments." *Id*.

Whether a peremptory strike was motivated by race is a question of fact. *Taylor v. Roper*, 577 F.3d 848, 854 (8th Cir. 2009). "In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are not fairly supported by the record." *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (citation and internal quotation marks omitted); *see also Ferguson v. Carlson*, No. 08-cv-5195 (PAM/FLN), 2009 WL 1883909, at *2 (D. Minn. June 30, 2009) ("[W]hen a state court analyzes a peremptory strike under *Batson*, . . . relief may be granted only if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record."). When considering *Batson* challenges on habeas review, "deference to trial court fact-finding is 'doubly great' . . . because of the unique awareness of the totality of the circumstances surrounding voir dire." *Taylor v. Minnesota*, No. 05-cv-294 (JRT/FLN), 2006 WL 2583150, at *6 (D. Minn. Sept. 7, 2006) (quoting *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001)). State court factual

determinations "may be rebutted only by clear and convincing evidence." *Ferguson*, 2009 WL 1883909, at *2 (citations omitted).

Petitioner has not met that burden here. Petitioner has not provided any persuasive reasons to rebut the trial court's findings of fact that the prosecutor did not strike juror 22 on account of her race. Rather, Petitioner makes the same arguments to this Court that were previously rejected by the state courts. Petitioner again fails to offer specific evidence tending to show pretext or discrimination. As such, he has not "overcome the special deference given to trial judges' rulings on *Batson* issues, and he [has not] overcome the normal presumption of correctness accorded to state court factual determinations in all federal habeas cases." *See Ferguson*, 2009 WL 1883909, at *9. Moreover, in light of the non-discriminatory reasons the prosecutor presented for striking juror 22, this Court is unable to conclude that the state courts' factual findings were incorrect. Accordingly, this Court recommends that Ground Four be denied.

### 4. Ground Six: Failure to Poll the Jury

Petitioner also argues his conviction for ineligible possession of a firearm must be vacated, and his case remanded for resentencing on the murder count, because the trial court discharged the jury without completing the verdict or providing the defense a reasonable opportunity to poll the jurors individually. Am. Pet. at 12. Petitioner's argument relates to what happened during his first trial:

> The first jury deliberated for several days before informing the [trial] court that it was 'hopelessly deadlocked' on the issue of attempted aggravated robbery, the underlying offense for the felony-murder charge. The [trial] court inquired of the foreperson, then of the jury as a group, whether further deliberation would assist in reaching a verdict; the jury unanimously agreed

> it would not. At [Petitioner's] request, the [trial] court then asked whether the jury reached a verdict on any counts. When the foreperson answered in the affirmative, the [trial] court collected the verdict forms, read the jury's verdict of guilty on the firearm-possession charge, and confirmed the other verdict forms were blank. The [trial] court then thanked and dismissed the jury. Neither [Petitioner] nor the state asked the court to poll the jury or objected to this procedure, even after the [trial] court asked if there was 'anything that the lawyers want to put on the record.'

*Burdunice*, 2019 WL 3000714, at *5. On direct appeal, Petitioner argued that the trial court erred by convicting him of unlawful firearm possession because the trial court did not follow the requirements of Minn. Stat. § 631.17 or "provide the defense" an "opportunity" to request polling of the jury. *Id*. The Minnesota Court of Appeals rejected Petitioner's argument, holding that "[n]othing in Minn. Stat. § 631.17 or applicable caselaw precludes a trial court from accepting a partial guilty verdict, discharging the jury, and entering a conviction under these circumstances." *Id*. The Minnesota Court of Appeals found that "the jury understood a unanimous decision was required to return a verdict, and that the jury, the [trial] court, and both parties understood the jury was returning only one verdict. When the [trial] court read the jury's guilty verdict aloud, no jurors dissented and [Petitioner] did not request that the jury be polled." *Id*.

In his Amended Petition for habeas relief, Petitioner again argues that the trial court erred by failing to provide him a reasonable opportunity to poll the jurors individually. Under Minn. Stat. § 631.17, when a verdict is returned, the trial court should read it to the jury and ask the jurors if it is their verdict. "If no disagreement is expressed by the jury, the verdict is complete, and the court shall discharge the jury from the case." *Id*; *see also State v. Crow*, 730 N.W.2d 272, 278 (Minn. 2007) ("[A] verdict is not complete unless

deliberations are over, the verdict is read in open court, and no dissent is expressed by the jury."). The trial court must poll a jury if a party requests that the jury be polled. Minn. R. Crim. P. 26.03, subd. 20(5)(a) ("When a verdict is returned . . . and before the jury is discharged, either party may request that the jury be polled. The court must poll the jury on request. The court may poll the jury on its own initiative."). Additionally, Minnesota law grants trial courts discretion to accept a partial verdict. Minn. R. Crim. P. 26.03, subd. 20(7) (stating that a court "may accept a partial verdict if the jury has reached a verdict on fewer than all of the charges and is unable to reach a verdict on the rest").

"The right to poll a jury is indeed a substantial right, but it is not a constitutional right." *United States v. Sturman*, 49 F.3d 1275, 1282 (7th Cir. 1995); *see also United States v. Hiland*, 909 F.2d 1114, 1138 (8th Cir. 1990) ("The right to poll the jury . . . is not of constitutional dimension); *United States v. Carter*, 772 F.2d 66, 67 (4th Cir. 1985) (same). While an alleged violation of a state procedural rule, as opposed to a constitutional right, is generally not cognizable on federal habeas review, a challenge of alleged state law error may be cognizable if the error "so infected the entire trial that the resulting conviction violates due process." *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Mack v. Caspari*, 92 F.3d 637, 640 (8th Cir. 1996) ("a contention that a state court has applied a procedural rule arbitrarily to a defendant's prejudice may state a federal constitutional due process violation").

Having reviewed the record and the arguments of the parties, this Court finds that any error in failing to poll the jury did not "so infect[ ] the entire trial that the resulting conviction violates due process." *See Estelle*, 502 U.S. at 72. As the Minnesota Court of

Appeals found, "the jury understood a unanimous decision was required to return a verdict, and that the jury, the [trial] court, and both parties understood the jury was returning only one verdict." *See Burdunice*, 2019 WL 3000714, at *5. This is demonstrated by the fact that (1) the jury informed the trial court that it was "hopelessly deadlocked" on the issue of attempted aggravated robbery, the underlying offense for the felony-murder charge; (2) the jury told the court that further deliberation would not assist them in reaching a verdict; (3) the jury informed the court that it was able to reach a verdict on one of the counts; (4) the foreperson signed the verdict form associated with the one count that the jurors were able to reach a unanimous verdict on; and (5) none of the other verdict forms were filled out. *See id*. And when the trial court read the jury's guilty verdict on the unlawful firearm possession charge, no jurors dissented, and they were thanked and excused. *See id*. Neither party requested that the jury be polled. *Id*. While the trial court did not ask the jurors if this was their verdict, it is evident to this Court, as it was to the Minnesota Court of Appeals, that the jury reached a unanimous verdict on the unlawful firearm possession charge. Thus, even if the trial court had erred by failing to poll the jury, the error did not "so infect[ ] the entire trial that the resulting conviction violates due process." *See Estelle*, 502 U.S. at 72. This Court therefore recommends that Ground Six be denied.

### 5. Ground Seven: Prosecutorial Misconduct

Petitioner next argues that cumulative prosecutorial misconduct violated his rights to due process and a fair trial. Am. Pet. at 13. Specifically, Petitioner alleges that the prosecutor: (1) improperly vouched for witnesses; (2) burden-shifted; (3) misstated numerous clearly established laws intentionally to confuse the jury and the trial court; (4)

misrepresented, mischaracterized, and misstated evidence to confuse or mislead the jury; (5) elicited and introduced inadmissible evidence; (6) disparaged Petitioner's character and misused Rule 609 impeachment evidence to prejudice the jury against Petitioner; and (7) disregarded the trial court's warnings regarding improper remarks, comments, innuendos about witnesses (particularly about the prosecutor calling Petitioner a "liar"). *Id*. Relying on the Fifth, Sixth, and Fourteenth Amendments, Petitioner argues that such misconduct entitles him to a new trial. Resp't's App. at 93, 116-20.

"State prosecutorial misconduct warrants federal habeas relief only if a petitioner can establish that 'the misconduct infected the trial with enough unfairness to render [the] conviction a denial of due process.'" *Dean v. Corbo*, No. 04-cv-2639 (DSD/RLE), 2005 WL 3526677, at *1 (D. Minn. Dec. 22, 2005) (quoting *Roberts v. Bowersox*, 137 F.3d 1062, 1067 (8th Cir. 1998)); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)) ("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"). "The court evaluates the totality of the circumstances to determine if there is a reasonable probability that 'the remarks affected the trial's outcome.'" *Dean*, 2005 WL 3526677, at *1 (quoting *Roberts*, 137 F.3d at 1067). A habeas petitioner "bears the heavy burden of showing that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Mack v. Casper*, 92 F.3d 637, 643 (8th Cir. 1996) (citing *Jones v. Jones*, 938 F.2d 838, 844-45 (8th Cir. 1991)).

The Minnesota Court of Appeals considered Petitioner's prosecutorial misconduct arguments and rejected them, "discern[ing] no impropriety." *See Burdunice*, 2019 WL 3000714, at *6. The Minnesota Court of Appeals found that Petitioner's characterizations of the prosecutor's statements and arguments were not supported by the record. Specifically, the Minnesota Court of Appeals noted that the prosecutor did not misstate the burden of proof or endorse a witness's credibility. *See id.* Rather, the prosecutor "focused appropriately on discrediting [Petitioner's] self-defense claim." *Id.* The Minnesota Court of Appeals concluded that Petitioner did not meet his burden to establish prosecutorial misconduct. *See id.*

This Court has reviewed Petitioner's allegations and, consistent with the Minnesota Court of Appeals' decision, finds no impropriety. Petitioner did not present facts or arguments that demonstrate that the prosecutor committed an error "so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *See Mack*, 92 F.3d at 643. As such, this Court cannot find that the state court's decision was an unreasonable application of federal constitutional law. Accordingly, this Court recommends that Ground Seven be denied.

### 6. Ground Eight: Judicial Errors

Lastly, Petitioner argues the trial court's cumulative errors, misconduct, and bias violated his right to due process, double jeopardy, equal protection of the law, and right to a fair trial. Am. Pet. at 14. Specifically, Petitioner alleges that at both trials, the trial court: (1) disregarded the law-of-the-case doctrine; (2) disregarded Petitioner's double-jeopardy arguments; (3) submitted improper and inadequate jury instructions to the first jury, and

did not properly answer jury questions regarding CRIM JIGS; (4) violated Petitioner's constitutional right to be present at all stages of the judicial proceedings; (5) allowed the prosecutor to behave unprofessionally and unethically towards Petitioner and defense counsel and ignored and overruled all defense objections to prosecutor misconduct; (6) allowed inadmissible evidence to be introduced by the state in the second trial—evidence the court previously excluded; and (7) exhibited bias by showing clear distaste for Petitioner, and acted unethically and unprofessionally towards defense counsel.  *Id*. Petitioner relies on the Fifth, Sixth, and Fourteenth Amendments in support of his argument. *See* Resp't's App. at 92.

On habeas review, "[f]ederal courts generally will not rule upon irregularities in state trial procedure unless the trial errors infringe upon a specific constitutional right or are so prejudicial that they deny due process." *Harris v. Lockhart*, 743 F.2d 619, 620 (8th Cir. 1984).  "The record must either 'disclose actual bias on the part of the trial judge or leave the reviewing court with an abiding impression that the judge's remarks . . . projected to the jury an appearance of advocacy or partiality.'" *Warner v. Transamerica Ins. Co.*, 739 F.2d 1347, 1351 (8th Cir. 1984) (quoting *United States v. Singer*, 687 F.2d 1135, 1141 n.10 (8th Cir. 1982)); *see also Harrington v. Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997) ("In considering judicial misconduct on habeas review, we examine the trial judge's behavior in the context of the entire trial to determine whether the behavior was so prejudicial as to violate due process.").  A court should be slow to set aside a conviction for alleged judicial misconduct "unless it appears that the conduct was *intended* or *calculated* to disparage [a party] in the eyes of the jury *and to prevent* the jury from

exercising an impartial judgment upon the merits." *Rush v. Smith*, 56 F.3d 918, 922 (8th Cir. 1995); *La Barge Water Well Supply Co. v. United States*, 325 F.2d 798, 802 (8th Cir. 1963) (emphasis added); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (finding that "judicial remarks during the course of trial . . . do not support a bias or partiality challenge . . . [unless] they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible").

Petitioner raised these judicial error issues in a pro se brief with the Minnesota Court of Appeals.  Citing *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002), the Minnesota Court of Appeals held that Petitioner's judicial bias claims were waived because he failed to support them with citation to legal authority.  *Burdunice*, 2019 WL 3000714, at *6 n.3; *see* Resp't's App. at 114-15 (failing to cite any legal authority in Petitioner's pro se brief regarding the trial judge's alleged partiality and bias).  The Minnesota Court of Appeals went on to find that even if Petitioner's claims of judicial error were properly before it, the claims failed on their merits.[5]  *Burdunice*, 2019 WL 3000714, at *6 n.3.  "Review of the record, including those portions [Petitioner] highlights as indicative of bias and numerous rulings under review in [his] appeal, reveals the trial judge carefully considered numerous motions, objections, and procedural matters over the course of two lengthy and complicated trials."  *Id.*

---

[5] A "claim has not been fairly presented to the state courts when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural law." *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994); *cf. Rivera v. King*, No. 10-cv-3954, 2011 WL 4458729, at *6 (D. Minn. Aug. 12, 2011) (finding that a claim in an unaccepted Pro Se Supplemental Petition for Review to the Minnesota Supreme Court was unexhausted), *report and recommendation adopted by Rivera v. King*, 2011 WL 4436149 (D. Minn. Sept. 23, 2011); *Blevins v. Dept. of Corr.*, No. 13-cv-2796, 2014 WL 4966910, at *11-*12 (D. Minn. Oct. 3, 2014) (same).  While Petitioner failed to cite legal authority in support of his judicial bias argument, this Court will address the merits of his claim given that the Minnesota Court of Appeals considered them in a footnote.

In his pro se supplemental brief, Petitioner made blanket statements in support of his claim of judicial error, such as the trial judge "allowed the prosecutor to walk all over defense counsel, herself, and to mislead the jury," "made defense counsel feel intimidated and reluctant to raise objections," and "overrule[ed] everything [defense counsel] objected to, with attitude, distaste towards the defense, aggressively, and dismissively." *See* Resp't's App. at 114. Petitioner makes similar arguments in his Amended Petition, including that the trial judge "[e]xhibited bias by showing clear distaste in Petitioner, and acted unethically and unprofessionally towards defense counsel." Am. Pet. at 14. Petitioner's allegations do not establish that the trial judge was actually biased or prejudiced against him; nor do they constitute circumstances that would lead to a presumption of the existence of bias. *See, e.g., Taylor v. Hayes*, 418 U.S. 488, 501 (1974) (finding that the judge became "embroiled in a running controversy" with defense counsel); *Ward v. Monroeville*, 409 U.S. 57, 61-62 (1972) (finding that the judge was not "neutral and detached" because he had a pecuniary interest in the outcome of the case). Nor do the circumstances show that the trial judge "intended or calculated to disparage [Petitioner] in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits." *See Rush*, 56 F.3d at 922. Rather, this Court agrees with the Minnesota Court of Appeals' finding that "[r]eview of the record, including those portions [Petitioner] highlights as indicative of bias and numerous rulings under review in [his] appeal, reveals the trial judge carefully considered numerous motions, objections, and procedural matters over the course of two lengthy and complicated trials." *Burdunice*, 2019 WL 3000714, at *6 n.3. In light of the evidence against Petitioner, the rulings throughout trial and

statements of the trial judge, even when considered cumulatively, were not so prejudicial as to violate due process or otherwise render the trial unfair.  As such, Petitioner has not shown that the state court decision was contrary to or involved an unreasonable application of established precent.  Accordingly, this Court recommends Ground Eight be denied.

### III.  CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner filing a petition under 28 U.S.C. § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A Certificate of Appealability may be granted only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In order to do so, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, it is highly unlikely that any other court would treat Petitioner's claims for relief differently than they are being treated here.  Petitioner has not identified (and this Court cannot discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review.  It is therefore recommended that Petitioner should not be granted a Certificate of Appealability in this matter.

*[Continued on next page.]*

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      The Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 7, be **DENIED** and **DISMISSED WITH PREJUDICE**.

2.      A certificate of appealability not issue.


Date:  June ____29____, 2022                    _____*s/Tony N. Leung*_____
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Burdunice v. State*
                                                Case No. 20-cv-2215 (MJD/TNL)


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).